# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW KOERNER, | Case No. 1:20-CV-0522 |
| Plaintiff, | Hon. Franklin U. Valderrama |
| v. | Hon. Maria Valdez |
| EXPERIAN INFORMATION SOLUTIONS, INC., *et al*, | |
| Defendants. | |

### DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION FOR SUMMARY JUDGMENT</u>

Christopher A. Hall
JONES DAY
77 West Wacker
Chicago, IL 60601.1692
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
Emails: awwiers@jonesday.com
        chall@jonesday.com

*Counsel for Defendant
Experian Information Solutions, Inc.*

It has long been clear that Plaintiff Matthew Koerner's ("Plaintiff") claims against Experian Information Solutions, Inc. ("Experian") are meritless. He filed this case claiming that a $212 balance reported on an auto loan by Santander Consumer USA, Inc. ("Santander") was inaccurate. Discovery has shown that more than five years ago Santander sent Plaintiff a clear statement explaining why he owed the $212 at issue. Discovery has also put the lie to Plaintiff's claims of damages caused by Experian. Despite his allegations to the contrary, discovery has also shown that Plaintiff never contacted Experian himself to dispute this information, choosing instead to rely on credit repair organizations ("CROs"). Discovery has also shown that Experian's procedures here are the same that have been upheld as reasonable time and again in this Circuit. Plaintiff should have dismissed his claims long-ago, rather than burden this Court and Experian with the cost required to hand-hold Plaintiff through the undisputed facts and controlling law. For the reasons explained below, the Court should grant Experian's Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

## I.  FACTUAL BACKGROUND.[1]

In 2011, Plaintiff purchased a used-car, obtaining financing from Santander. SOF ¶ 10. Plaintiff soon stopped making timely payments on his loan, leading Santander to repossess the car and charge-off the loan. *Id.* ¶¶ 10-11. Santander let Plaintiff redeem the car after he was able to make a payment. *Id.* In August 2015, Plaintiff was in an accident and his car was a total loss. *Id.* ¶ 12. Plaintiff then obtained a payoff quote from Santander for $8,328.45, good through August 31, 2015 with a *per diem* of $4.94. *Id.* State Farm, the other driver's insurance, did not

---

[1] "SOF" refers to Experian's Local Rule 56.1 Statement of Facts which Experian files concurrently with this Motion and incorporates into this Memorandum. Citations to Exhibits refer to exhibits attached to Experian's Rule 56.1 Statement.

send a check until October 6, 2015, and only for the $8,328.45 with no additional interest or fees. *Id.* Santander applied the payoff to Plaintiff's Account, but after assessing fees and unpaid interest, the check did not cover all of what was owed. *Id.* ¶ 13. Santander then sent Plaintiff a deficiency notice explaining that the amount of the State Farm check "was less than the balance owed on [Plaintiff's] account" and showing a remaining balance owed of $212.65, an amount also reflected in Santander's ledger. *Id.* ¶ 14. This information was reported to Experian by Santander, who initially reported the account charged off in November 2013, with an amount of $11,458 written off. *Id.* ¶¶ 15-16. After receiving the payoff check from State Farm, the outstanding balance was reduced to $1. *Id.* In March 2018, Santander began reporting the outstanding balance of $212 at issue here. *Id.* ¶ 19.

In December 2016, Plaintiff retained a CRO, called Credit Restoration of Nevada ("CRN"). *Id.* ¶ 32. Plaintiff explained to CRN that he had fallen behind on his payments, the car was repossessed, and after the accident, State Farm sent him a check for the overage. *Id.* CRN submitted an online dispute, questioning the account balance, but did not provide any supporting documentation. *Id.* ¶ 18. Experian reinvestigated by sending an Automated Consumer Dispute Verification ("ACDV") form to Santander, who updated the written-off amount to $1 and verified the other information was accurate. *Id.* After waiting two years, in February 2019, Plaintiff retained another CRO called Go Clean Credit ("GCC"). *Id.* ¶ 34. For Equifax and Trans Union, GCC mailed the disputes directly to the credit bureaus, but for Experian, GCC "print[ed], put [the dispute letter] in envelopes, and stamp[ed]" the dispute letter so that "all [Plaintiff] had to do is drop them in a mailbox." *Id.* Even though Plaintiff explained to GCC the delay between the payoff quote and State Farm sending the check "would account for the final monies owed," GCC's dispute letters claimed that he "cannot imagine what the $212 was for." *Id.* ¶¶ 20; 35.

3

Experian reinvestigated this dispute by sending an ACDV form to Santander along with a copy of Plaintiff's letter. *Id.* ¶ __. Santander responded by verifying the accuracy of its reporting. *Id.* ¶ 21. In May 2019, GCC sent another letter, and Experian again sent an ACDV to Santander, who again verified its reporting. *Id.* ¶¶ 23-24. GCC sent an identical letter in June 2019, but Experian determined that additional disputes were frivolous, and informed Plaintiff of that fact. *Id.* ¶ 25. GCC then referred Plaintiff to its former owner/Michael McCandless' wife, Dawn McGraw at Price Law Group ("PLG"). *Id.* ¶ 36. PLG wrote another dispute letter in October 2019, that repeated Plaintiff's claim that the balance was inaccurate, and once again contained no proof that Santander's reporting was incorrect. *Id.* ¶ 37. Experian explained it had already reinvestigated this dispute and would not do so again, absent additional proof. *Id.* ¶ 27. At the same time, PLG sent identical disputes to Equifax, who forwarded that dispute to Santander. *Id.* ¶ 28. Santander again verified the accuracy of its reporting, and Experian was copied on these responses. *Id.* In January 2020, Santander sent Experian an Automated Universal Data form ("AUD") certifying that the $212 balance and charge-off status was accurate. *Id.* ¶ 29.

## **LEGAL STANDARD**

"[S]ummary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Schacht v. Wisconsin Dep't of Corr.,* 175 F.3d 497, 504 (7th Cir. 1999) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 647 (7th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The movant "has the burden of showing that there is no genuine issue of material fact . . . However, [the non-movant] retains the

burden of producing enough evidence to support a reasonable jury verdict in her favor." *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).

## ARGUMENT

I.  **THERE IS NO EVIDENCE OF INACCURATE INFORMATION.**

The FCRA "requires a plaintiff to show that a consumer reporting agency prepared a report containing 'inaccurate' information." *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). To prevail on either a § 1681e(b) or § 1681i claim, a plaintiff must demonstrate inaccuracy because both "[s]ections 1681e(b) and 1681i(a) require consumer reporting agencies to adopt processes to ensure that the information they report is accurate." *Soyinka v. Equifax Info. Servs., LLC*, No. 20 C 1773, 2020 WL 5530133, at *2, --F. Supp. 3d--, (N.D. Ill. Sept. 15, 2020); *see Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 591 (7th Cir. 2019)(a CRA "cannot be liable as a threshold matter if it did not report inaccurate information"). In *Denan*, the Seventh Circuit held a CRA's duty is to report factually accurate information, and does not extend to determining liability. *See* 959 F.3d at 295.

A.  **The Charged-Off Status and $212 Balance is Accurate.**

Plaintiff filed this case claiming that the $212 balance he disputed in March 2019, and which remained thereafter was inaccurate, and suggesting that the loan had not been charged off. *See* ECF No. 3, ¶¶ 28, 45. This information is demonstrably accurate.

*First*, it is clear that Santander charged off the debt. An entry in Santander's account activity notes clearly indicates that Santander had charged the debt off as of November 30, 2013, the same time they began reporting that information to Experian. SOF ¶ 11. As to the monthly "CO" notations, this is an industry standard way of reporting that a loan has been charged off. *Id.* at ¶ 9. Courts have held that this reporting is not inaccurate or misleading when, there is no

dispute that the loan was charged off. *See*, *e.g.*, *Cardinali v. Plusfour, Inc.*, No. 216CV02046JADNJK, 2019 WL 4723071, at *11 (D. Nev. Sept. 26, 2019); *Barakat v. Equifax Info. Servs., LLC*, No. 16-10718, 2017 WL 3720439, at *2 (E.D. Mich. Aug. 29, 2017).

*Second*, the $212 balance is also clearly stated in Santander's documents. The November 2015 "Explanation of Calculation of Surplus or Deficiency" Santander sent Plaintiff explained "[t]he amount of the settlement check was less than the balance owed on your account" and showed that Plaintiff remained responsible for $212.62. SOF ¶ 14.[2] Similarly, Santander's account ledger shows that after they applied the settlement check to the principle, outstanding fees, and accrued interest, a principle balance of $1 remained, and other fees left a total payoff owed when this case was filed of $212.65. *Id.* at ¶ 13.

This remaining balance makes sense. Plaintiff was quoted a payoff of $8,328.45, good through August 31, 2015. State Farm did not mail the check until October 6, 2015, and did not include any additional amount to account for additional interest or fees that had accrued. Even then, Santander's payoff statement made clear that the payoff amount quoted was "subject to a final reconciliation and accounting . . . ." Ex. G. As Plaintiff himself explained to GCC, this delay likely "account[s] for the monies owed." Ex. BB at 2.

---

[2] Plaintiff's unsupported claim that he did not receive this letter does not change the fact that it demonstrates the amounts accuracy. Nor has Plaintiff offered any evidence to rebut the presumption that First-class mail, sent though the United States Postal Services is received. *See Vincent v. City Colleges of Chicago*, 485 F.3d 919, 922 (7th Cir. 2007)("Evidence of mailing is evidence of delivery.")(citations omitted).

The record supports one conclusion: Plaintiff owed Santander $212. It was accurate for Experian to report this amount and the Court's inquiry can end here as Experian is indisputably entitled to summary judgment.

### B. Experian is not Required to Determine if Plaintiff is Liable for the $212 Balance.

As PLG's October 2019 letter makes clear, Plaintiff's real theory is that "Santander should be collecting the balance from State Farm, not [Plaintiff]." Ex. S. Under this theory, since Santander released title to State Farm, Plaintiff was absolved of his remaining liability. Notwithstanding that Santander has explained it does release titles to insurance companies even when an insurance check does not cover the total owed, this theory is not actionable. What Plaintiff suggests is that Experian should have somehow reviewed a payoff letter not addressed to State Farm, Plaintiff's statement that Santander had released title, and come to the conclusion that the $212 balance had been waived, or was otherwise inaccurate. The only way for Experian to do so, would be to obtain the contract between Plaintiff and Santander, then apply the facts to the contract's terms. This is the sort of liability determination that the Seventh Circuit explained in *Denan* is beyond the scope of an FCRA claim against Experian. *See* . 959 F.3d at 295.

### C. Plaintiff's Shift to Historical Balance Information Cannot Save His Claims.

In discovery, Plaintiff has largely abandoned his claim that the $212 balance and charged-off status are inaccurate. His focus has turned to historical balance information that Plaintiff claims is nonsensical. Specifically, Plaintiff has focused on a December 2016 disclosure he obtained showing the historical balances Santander had reported over time. SOF ¶ 16. This disclosure showed that in September 2015, Santander reported an account balance of $7,220. Ex. J at 2-3. In October, after applying the payoff check, this amount was reduced to $1. *Id.*

Plaintiff's last-minute shift does not change the conclusion that Experian is entitled to summary judgment.

*Initially*, it is black-letter law that a party cannot amend his pleadings at summary judgment. *See*, *e.g.*, *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012)("a plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'"). Plaintiff's complaint refers only to the $212 balance and charged off status, it is too late for him to change that theory now. *Second*, this information comes from a December 2016 disclosure that was sent to Plaintiff. SOF ¶ 16. It is thus well beyond the two-year statute of limitations of the FCRA. *See* 15 U.S.C. § 1681p(1). *Third*, this information comes from a portion of Plaintiff's disclosure that is provided as additional information to the consumer, and is not included in consumer reports provided to third-parties. *See* Declaration of A. Simmons at ¶ 16. Without evidence that the alleged inaccurate information was included in a consumer report provided to a third party, Plaintiff's claims fail. *See Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833–34 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)("without a consumer report, there is no duty under the Act to follow reasonable procedures . . .there cannot be a consumer report without disclosure to a third party."). *Fourth*, Plaintiff cannot base his § 1681i claim on this information for the simple reason that he never disputed it. *See Ruffin-Thompkins*, 422 F.3d at 608.

*Finally*, far from being nonsensical, the historical information Santander reported tracks its records from that time. Prior to receiving the payoff, Santander's records show a principle balance of $7220.82. Ex. E at 1. After applying the payoff, a principle balance of $1 remained. *Id.* As to the $8,028 payment Santander reported it received, that amount matches the amount Santander applied to Plaintiff's account after deducting $300 for late charges. *Id.* It makes sense

8

that Santander might believe it was more accurate and more favorable for Plaintiff to reduce the written off amount from $11,458 it had reported in 2013 to $1 to reflect that it had mostly recovered what it was owed. Whether this was an appropriate adjustment is a question for an accountant or tax professional, not the basis for an FCRA claim.[3]

In the end, Plaintiff has never had evidence, or even a colorable claim that Experian's reporting of his Santander Account was inaccurate. Experian is entitled to summary judgment.

## II. THERE IS NO EVIDENCE OF ACTUAL DAMAGES.

"Before any discussion of the reasonableness of the reinvestigation is necessary . . . [Plaintiff] must show that []he 'suffered damages as a result of the inaccurate information.'" *Ruffin-Thompkins*, 422 F.3d 603, 608 (7th Cir. 2005)(quoting *Sarver vs. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004). A failure to show a causal link to actual damages is fatal to claims of negligence as well as a claim of willfulness. *See Ruffin-Thompkins*, 422 F. 3d at 610 ("The district court correctly found that '[b]ecause Ruffin–Thompkins's claim under the FCRA cannot survive, it follows, *a fortiori,* that the Court must deny her claim for punitive or statutory damages.'"); *Jackson v. Experian Info. Sols., Inc.*, 236 F. Supp. 3d 1058, 1065 (N.D. Ill. 2017).

Here, the record is devoid of any evidence that Experian's reporting of the Santander account caused Plaintiff any actual damages. Plaintiff has not produced any denial letters to show that a creditor denied Plaintiff's application based on the Santander account, a telling omission given the adverse action notice requirements of § 1681m(a). *See* SOF ¶ 40. As to

---

[3] For instance, the Office of the Comptroller of the Currency requires financial institutions to charge off "closed end" debts that are more than 120 days past due. *See* OCC Bulletin 2000-20, June 20, 2000 *available at* https://www2.occ.gov/news-issuances/bulletins/2000/bulletin-2000-20.html

Plaintiff's claims of emotional distress, the primary evidence is Plaintiff's own self-serving testimony, which courts regularly fail to meet the Seventh Circuit's strict standard. *See Sarver*, 390 F. 3d at 971 ("We have maintained a strict standard for a finding of emotional damage 'because they are so easy to manufacture.'")(quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001). While Plaintiff's mother testified that Plaintiff at times expressed exasperation, she explained that it was not a frequent topic of conversation and that she was not sure exactly who was involved, and was unaware that Plaintiff had even filed a lawsuit until the day before she was deposed *See*, *e.g.*, Ex. B at 10:24-11:7; 11:23-25; 19:11-23; 27:23-28:2. Asked specifically if her testimony regarding Plaintiff's exasperation involved Experian, Plaintiff's mother answered "the situation only applied to Santander.· It doesn't apply to any of the other ·issues.· That is what he was talking to me about." *Id.* at 33:9-13. Plaintiff has not put forward evidence to show a causal link between any of his supposed damages and Experian. Experian is entitled to summary judgment.

### III. EXPERIAN'S PROCEDURES ARE REASONABLE AS A MATTER OF LAW.

It is well-recognized that, because the FCRA is not a strict liability statute, even had Experian reported inaccurate information, it is not liable if it employed reasonable procedures. *See*, *e.g.*, *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Summary judgment is appropriate "where the reasonableness of the procedures used ... is beyond question." *Sarver v. Experian Info. Sols., Inc.*, 299 F. Supp. 2d 875, 877 (N.D. Ill.), *aff'd Sarver*, 390 F.3d 969 .

#### A. Experian's Reliance on Santander is Reasonable.

Section 1681e(b) generally requires Experian to "accurately transcribe, store and communicate consumer information received from a source that it reasonably believes to be reputable, in a manner that is logical on its face." Fed. Trade Comm'n, 40 years of Experience

with the Fair Credit Reporting Act, 2011 WL 3020575, at *59. It is presumptively reasonable to obtain and report information from financial institutions like Santander "unless there was prior notice from the consumer that the information might be inaccurate." *Sarver*, 390 F.3d at 972; *see also Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 592 (7th Cir. 2019)("Equifax had no reason to believe that BMO Harris was an unreliable source, so its potential liability began only after Walton first disputed the information in her credit report.").

Here there is no evidence that Santander was an unreliable source, let alone evidence that Plaintiff put Experian on notice of that fact. Rather, by all indications, Santander accurately reported the facts of Plaintiff's late payments, charge-off, and remaining amounts owed. There is thus no evidence to support a claim that Experian's reliance on Santander was unreasonable.

Plaintiff's efforts to paint historical balance information or unrelated investigations into Santander as the sort of notice described in *Sarver* is a red-herring. As explained, the balance information is a near-perfect match of Santander's own contemporaneous records and accurately describes what happened. Even if this information were nonsensical as Plaintiff claims, the Seventh Circuit has already rejected this kind of argument. *See Sarver*, 390 F.3d at 972 ("What Sarver is asking, then, is that each computer-generated report be examined for anomalous information and, if it is found, an investigation be launched . . . we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily."). Similarly, Plaintiff produced a press release of a settlement between Santander and 34 states attorneys general, but that press release says nothing about Santander's credit reporting, let alone anything about Experian having notice of any problems. *See* Ex. GG.

### B. Experian's Fulfilled Its Obligations Under § 1681i(a).

#### 1. Plaintiff's disputes did not trigger Experian's duty to reinvestigate because they came from Credit Repair Organizations.

The FCRA requires Experian to conduct a reinvestigation when "the consumer notifies the agency *directly* . . . ." 15 U.S.C. § 1681i(a)(1)(A)(emphasis added). This section provides consumers a way to correct errors in their credit reports by contacting CRAs directly. Consistent with this purpose, courts have increasingly recognized that disputes sent by CROs do not trigger a CRAs duty to reinvestigate. *See*, *e.g.*, *Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921 (9th Cir. 2019)(letter sent by GCC did not trigger duty to reinvestigate); *Turner v. Experian Info. Sols., Inc.*, No. 3:16 CV 630, 2017 WL 2832738, at *2 (N.D. Ohio June 30, 2017), *aff'd*, No. 17-3795, 2018 WL 3648282 (6th Cir. Mar. 1, 2018)(same).

Plaintiff has never contacted Experian directly to dispute the Santander account, always choosing instead to go through CRO intermediaries. There is no dispute that GCC is a CRO, and though Plaintiff mailed his disputes, GCC's own employee confirmed that GCC print[ed], put [the dispute letter] in envelopes, and stamp[ed]" the dispute letter, so that "all [Plaintiff] had to do is drop them in a mailbox." Ex. AA. As to the October 2019 dispute, PLG simply carried on the activities of its GCC, which is not surprising since Dawn McGraw is a former owner of GCC, and is the only lawyer GCC refers its clients to. SOF ¶ 36. The mere fact that PLG is a law firm does not preclude them from being a CRO. As in this case, PLG uses "the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving any consumer's credit record, credit history, or credit rating" and certainly "provid[ed] advice" with that service. *See* 15 U.S.C. § 1679a(3)(defining a CRO). PLG expressly advertises that they can help consumers "get negative information removed from your credit report." *See* SOF ¶ 38. While not every dispute

sent by a law firm will mean that it came from a CRO, or fail to trigger § 1681i(a). That section was intended to provide consumers with a means to correct legitimate errors, and not as a means for CROs, or unscrupulous attorneys to seek fees by disputing accurate information and then filing meritless follow-on litigation like this case.

### 2. Experian's Reinvestigations Were Reasonable.

As other courts have explained, "the CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher" by forwarding the dispute as described in § 1681i(a)(2). *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009). That is because "[o]rdinarily, the creditor is best situated to determine whether the information it reported was inaccurate or incomplete and to ensure its correction." S. REP. 103-209, 6 (available at 1993 WL 516162)(explaining rationale for adding § 1681s-2). The Seventh Circuit has repeatedly upheld the use of ACDVs to conduct reinvestigation. *See Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 604 (7th Cir. 2006)(upholding summary judgment where Experian's reinvestigation consisted of contacting furnisher using CDV form); *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019)("On receiving notice of Humphrey's dispute, the CRAs repeatedly contacted Navient to verify that Humphrey had in fact incurred the loans . . . That was a reasonable reinvestigation . . ."). In turn, courts in this district have recognized "the [A]CDV procedure alone is accepted by courts as an adequate method both for assuring accuracy and for reinvestigation." *Lee v. Experian Info. Sols.*, No. 02 C 8424, 2003 WL 22287351, at *6 (N.D. Ill. Oct. 2, 2003).

There is no evidence that this case is not one of the ordinary cases where Santander was in the best position to determine if the balance and charge off status were accurate. Although not obligated to do so, Experian reinvestigated several of Plaintiff's disputes regarding Santander. In

13

April 2019, Experian reinvestigated the first dispute described in the Amended Complaint by sending an ACDV that attached the documents Plaintiff submitted to Santander. Those documents show that Plaintiff owed a remaining balance as they demonstrate that the payoff was received in October 2015, well after the August 31, 2015 date the payoff was good for. The only reasonable way to confirm that the balance was accurate was to forward those documents to Santander so that they could investigate as obliged to under § 1681s-2. This was a reasonable reinvestigation under the facts of this case.

### 3. Experian's Determination that Plaintiff's October 2019 Dispute Was Frivolous or Irrelevant Is Not Actionable.

When Experian received the October 2019 letter from PLG, it determined that the dispute was frivolous under § 1681i(a)(3), and notified Plaintiff of that determination. SOF ¶ 27. That determination was reasonable here. The October 2019 letter included virtually no new information, and did not include any additional documents to show that the $212 balance or charge-off status was inaccurate. Ex. S. Experian's consumer-friendly policies err on the side of reinvestigating if the consumer provides new information or a new story to explain the inaccuracy. But the meager information included in this letter, which largely rephrases Plaintiff's March 2019 letter hardly changes the reason why Plaintiff is disputing, let alone provide additional information that would change the outcome.

Even if Experian should have reinvestigated this dispute, that failure to do so had no impact on Plaintiff. When a furnisher responds to an ACDV in e-Oscar, the other CRAs receive a carbon copy. SOF ¶ 28. Here, Equifax forwarded a verbatim copy of Plaintiff's dispute letter to Santander, Santander responded, and Experian was copied on that response. *Id.* That carbon copy response shows that Santander, for at least the third time, verified that the $212 balance and charge of status was accurate. *Id.* Then, in January 2020, Santander verified for a fourth time that

this information was correct, sending Experian specific instructions to ensure that this reporting was on Plaintiff's file. *Id.* ¶ 29. Thus, the mere failure to send one-more ACDV to Santander has no real-world impact on Plaintiff or his credit report.

## IV.   THERE IS NO EVIDENCE OF A WILLFUL VIOLATION.

Where, as here, the plaintiff seeks statutory damages under § 1681n, he must establish the element of willfulness. A defendant acts in willful violation of the FCRA where it acts in "reckless disregard of [its] statutory duty." *Safeco*, 551 U.S. at 57. This is an entirely objective inquiry. *See Van Straaten v. Shell Oil Prods. Co.*, 678 F.3d 486, 492 (7th Cir. 2012) (Cudahy, J., concurring). A willful violation cannot be found where a defendant "followed an interpretation that could reasonably have found support in the courts . . ." *Safeco*, 551 U.S. at 70, n. 20.

At a minimum, Plaintiff's claims that any of Experian's purported violations were willful fails as a matter of law. Even supposing there were some problem with Experian's general reliance on Santander, it cannot be a willful violation to rely on a financial institution like Santander, when the Seventh Circuit has held that such reliance is presumptively reasonable. *See Sarver*, 390 F.3d at 972. As explained above, multiple courts have upheld the use of ACDVs to conduct reinvestigations. Accordingly, Experian's use of ACDVs here cannot be a willful violation. *See, e.g.*, *Garrett v. Experian Info. Sols., Inc.*, No. 11-12523, 2012 WL 1931324, at *6 (E.D. Mich. May 29, 2012).

## CONCLUSION

For the foregoing reasons, Experian respectfully requests that this Court grant Experian summary judgment and dismiss this case with prejudice.

Dated: February 1, 2021

Respectfully submitted,

*s/ Christopher A. Hall*
Christopher A. Hall
JONES DAY
77 West Wacker
Chicago, IL 60601.1692
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
Emails: chall@jonesday.com

*Counsel for Defendant
Experian Information Solutions, Inc.*