**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MATTHEW KOERNER, | |
| Plaintiff, | |
| v. | No. 20-CV-0522 |
| | Judge Franklin U. Valderrama |
| EXPERIAN INFORMATION SOLUTIONS, INC., et al, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Matthew Koerner (Koerner) was involved in an automobile collision. R. 110, Resp. at 2.[1] State Farm Insurance (State Farm), the at-fault driver's insurance company, deemed Koerner's vehicle a total loss and as a result, sent Koerner's lien holder, Santander Consumer USA, Inc. (Santander), a check for the payoff amount *Id*. Santander informed Koerner that the State Farm check had paid off his vehicle; however, when Koerner checked his Experian Information Solutions, Inc. (Experian) credit report, he discovered that Experian was reporting the Santander account with an outstanding balance of $212. *Id*. After filing several dispute letters, with no resolution, Koerner filed this lawsuit under the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681, *et seq* against Santander, Equifax Information Services, LLC (Equifax), Trans Union, LLC (Trans Union), and Experian. R. 3, SAC. Experian has

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

moved for summary judgement. For the reasons that follow, Experian's motion for summary judgement is granted in part and denied in part.

## Background

The following facts are set forth favorably to Koerner, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). While the Court draws all reasonable inferences from the facts in Koerner's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted). *See Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts.").

Koerner purchased a used-vehicle in 2011 after obtaining financing from Santander. Pl.'s Resp. DSOF ¶ 10.[2] Koerner, however, stopped making timely payments on his loan which caused Santander to repossess the vehicle and charge-off the loan. *Id*. ¶ 11. Nonetheless, Koerner was able to redeem the vehicle after he was able to make a payment. *Id*. On August 7, 2015, Koerner was involved in a not-at-fault collision in which State Farm, the insurer of the at-fault driver, determined his vehicle was a total loss. *Id*. ¶ 12. Santander sent Koerner a pay-off estimate for his vehicle of $8,328.45 which was good through August 31, 2015, with a per diem of

---

[2]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for Experian's Statement of Undisputed Facts (R. 105); "Pl.'s Resp. DSOF" for Koerner's Response to Experian's Statement of Undisputed Facts (R. 101-1 at 1–19); "PSOAF" for Koerner's Statement of Additional Facts (R. 101-1 at 20–25); and "Def.'s Resp. PSOAF" for Experian's Response to Koerner's Statement of Additional Facts (R. 113).

$4.94. *Id*. State Farm, however, did not issue a check until October 6, 2015, and only for the $8,328.45. *Id*. After applying the $8,328.45 to Koerner's account and assessing fees and unpaid interest, Santander determined State Farm's check did not cover all of what was owed. *Id*. ¶ 14. Accordingly, Santander sent Koerner a deficiency letter explaining that the amount of the State Farm check was less than the balance owed by Koerner, and thus, he had a remaining balance of $212.65. *Id*. Koerner claims he never received the deficiency letter. *Id*. Further, Koerner states that following State Farm's payment, he contacted Santander to confirm that the vehicle had been paid off by State Farm and that his account balance was zero, which Santander confirmed. *Id*. ¶ 20.

Santander had been sending Koerner's account information to Experian who in turn had been reporting it since 2011. Pl.'s Resp. DSOF ¶ 15. In December 2016, Koerner retained Credit Restoration of Nevada (CRN), a credit reporting organization (CRO). *Id*. ¶ 32. He informed CRN that he had fallen behind on his payments, the car was repossessed, and after the accident and issuance of a check to Santander, State Farm sent him a check for approximately $200 because State Farm's valuation of the vehicle was more than what he owed. *Id*. An online dispute was sent to Experian questioning the account balance; however, it failed to provide any supporting documentation. *Id*. ¶ 18. Experian reinvestigated by sending an Automated Consumer Dispute Verification (ACDV) form to Santander, who updated the written-off amount to $1 and verified that the charged off status was accurate. *Id*.

3

In March 2019, after checking his Experian credit report, Koerner discovered that Santander was reporting his Santander account with a $212 outstanding balance. Pl.'s Resp. DSOF ¶ 19. To investigate the situation, Koerner retained Go Clean Credit (GCC), another CRO. *Id.* ¶ 34. GCC's procedures for sending dispute letters entails that it mail letters directly to Trans Union and Equifax, but it has an alternative procedure for Experian. *Id.* For Experian, GCC writes the dispute letter and places it in a sealed envelope addressed to Experian so that all a consumer must do is drop it in a mailbox. *Id.*

Sometime in March of 2019, GCC wrote and sent dispute letters to Experian as described above. Pl.'s Resp. DSOF ¶¶ 34, 35. Experian claims that Koerner only reviewed the letters and dropped them in the mail. *Id.* ¶ 35. The letters contested the $212 balance and explained that Koerner's vehicle had been paid off by State Farm, and included copies of Santander's August 17, 2015, payoff letter, the October 6, 2015, State Farm letter to Santander, and the canceled check for the payoff amount. Resp. at 3; Pl.'s Resp. DSOF ¶ 20. Experian reinvestigated this dispute by sending an ACDV form to Santander along with a copy of Koerner's letters. Pl.'s DSOF ¶ 21. Santander responded by verifying the accuracy of the $212 balance and the charged-off reporting. *Id.* ¶ 22.

A second letter was sent to Experian in May of 2019, in which Koerner complained that Experian's response had been inadequate, requested a description of how Experian had verified the Santander account, and requested an answer as to why Experian had completely ignored the documentary proof showing that Koerner

was no longer responsible for any debt owed on the vehicle. Resp. at 3; Pl.'s Resp. DSOF ¶ 23. This letter, however, did not include any supporting documents. Pl.'s DSOF ¶ 23. Experian again sent an ACDV to Santander with the dispute letters, and Santander again verified the accuracy of the account. *Id.* Experian also sent Koerner a description of its reinvestigation procedures. *Id.*

In July 2019, an identical letter was received by Experian; however, Experian determined that additional disputes were frivolous, and informed Koerner of that fact. Pl.'s Resp. DSOF ¶ 25. Koerner then retained the services of Price Law Group (PLG). *Id.* ¶ 36.

In October of that same year, Experian received another dispute letter which Experian claims PLG wrote, which again disputed the $212 balance, but did not include any supporting documents. Pl.'s Resp. DSOF ¶¶ 26, 37. Experian determined that the letter was a duplicate of the previous dispute letters and mailed a letter back informing him of its determination. *Id.* Although disputed, Koerner claims that the March, May, June, and October letters were personally written by him with the assistance of GCC or his attorneys. *Id.* at 34.

Koerner subsequently filed suit against Santander, Equifax, Experian, and Trans Union alleging violations of the FCRA 15 U.S.C. § 1681s-2(b) (count I), FCRA 15 U.S.C. § 1681e(b) (count II), and 15 U.S.C. § 1681i (count III). R. 1. Compl.[3] Koerner seeks actual damages under 15 U.S.C. § 1681o, and among other things, statutory and punitive damages under 15 U.S.C. § 1681n(a). SAC ¶ 74. Equifax,

---

[3]Koerner filed an Amended Complaint SAC R. 3.

Trans Union, and Santander have all filed stipulations of dismissals. R. 71, 74, 96. Experian has now moved for summary judgment.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (internal quotation marks and citations omitted). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d

697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

### I.    Violation 15 U.S.C. § 1681e(b) (Count II)

In count II Koerner alleges that Experian violated 15 U.S.C. § 1681e(b) of the FCRA by failing to employ and follow reasonable procedures to assure maximum possible accuracy of Koerner's credit report information and file. SAC ¶ 63. He claims that, as a result of this violation, he has sustained damages including the loss of credit opportunities and favorable credit terms, emotional distress, humiliation, and mental anguish. *Id*. ¶ 64. Experian argues that it is entitled to summary judgement, however, because there is no evidence that Experian reported any inaccurate information. R. 104, MSJ at 5. The Court agrees.

The FCRA "seeks to promote fair and accurate credit reporting and to protect consumer privacy." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). To that end, the FCRA "regulates the consumer reporting agencies that compile and disseminate personal information about consumers." *Id*. The FCRA applies not only to credit reporting agencies, but also to furnishers of information to the agencies. *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1003 (N.D. Ill. 2009). The FCRA imposes duties upon creditors and furnishers of information commensurate with "their respective roles in the credit reporting market." *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). "Furnishers provide consumer credit data to credit reporting agencies, and the consumer reporting agencies reflect that

information on a consumer's credit history." *Id*. The FCRA's "statutory scheme primarily tasks furnishers with providing accurate information to the consumer reporting agencies…." *Chuluunbat v. Experian Info Sols., Inc.*, 4 F. 4th 562, 566 (7th Cir. 2021). Section 1681(e)(b) of the FCRA governs compliance procedures and provides that: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). If a consumer disputes "the completeness or accuracy of any item of information, a consumer reporting agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). The FCRA provides consumers a civil remedy for damages against any person who willfully or negligently fails to comply with any requirement imposed under 15 U.S.C. § 1681, et seq. 15 U.S.C. §§ 1681n–1681o.

In order to prevail in a section 1681e(b) claim, a plaintiff must show that a credit reporting agency prepared a report containing inaccurate information. *Dena* 959 F.3d at 297. A credit reporting agency, however, "is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA does not make reporting agencies strictly liable for all inaccuracies." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). Accordingly, "a credit reporting agency is not liable under the FCRA if it followed reasonable procedures to assure maximum possible accuracy, but nonetheless reported inaccurate information in the consumer's credit report." *Id*. "The reasonableness of a reporting agency's

8

procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver*, 390 F.3d at 971.

Experian argues that there is no evidence that it reported inaccurate information. MSJ at 5. The absence of such evidence submits Experian dooms Koerner's case. MSJ at 2, 7; citing *Denan*, 959 F.3d at 294. Surprisingly, Koerner fails to address this argument and therefore waives any argument against it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.") Rather, Koerner insists that there are factual disputes that preclude summary judgment because Santander's notes and records are confusing and convoluted to the point that Santander in a sworn affidavit stated it was not "able to recreate its calculation of the deficiency balance" and was "unable to provide additional documents regarding its original calculation." Resp. at 4. Next, Koerner argues that the amount requested by Santander in the November 16, 2015, deficiency letter of $212.65 does not match Santander's Account Report or $212.62. *Id*. Lastly, Koerner contends that because Experian reported the Santander account as charged-off for every month from November 2013 through January 2019, even after he redeemed his vehicle, it effectively communicates to any potential creditor that he had defaulted and failed to make payments on the account every month for over five years, and thus, should have been updated and removed. *Id*. at 7.

The Court agrees with Experian that there is no evidence that it reported inaccurate information. Because inaccurate information is the *sine qua non* of a § 1681e(b) claim, Experian is entitled to summary judgement. See *Denan*, 959 F.3d at

293–294. Essentially, Koerner's dispute is not over whether Experian reported inaccurate information, but that Experian was required to determine if Koerner was liable for the $212 balance. Seventh Circuit case law forecloses this argument. *Id.* at 295. In *Denan*, the consumer-plaintiff argued that the reported debt was legally invalid. *Id.* The Seventh Circuit held that "inaccurate information under 15 U.S.C. § 1681i … mean[s] factually inaccurate information, as consumer reporting agencies are neither qualified nor obligated to resolve legal issues." *Id.* at 296. The Seventh Circuit also determined that "[a]ccuracy for furnishers, however, means information that correctly reflects ... liability for the account, [and n]either the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies, much less a duty to determine the legality of a disputed debt." *Id.* at 295. (internal citations and quotation marks omitted). Further, "the FCRA does not require unfailing accuracy from consumer reporting agencies[; i]nstead, it requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy when it prepares a credit report." *Id.*

Lastly, the Court is unpersuaded by Koerner's argument that Experian's reporting of Koerner's charged-off information was misleading to any potential creditor. Resp. at 7. The Court agrees with Experian that this kind of speculation is insufficient at summary judgment. Reply at 6; citing *Danley v. Equifax Info. Servs.*, 2020 WL 616466, at *4 (N.D. Ill. Feb. 10, 2020) ("Plaintiff relies almost entirely on her own speculation about what a creditor would think[,]" yet, "Plaintiff is not a creditor and has no apparent basis for speculating about what a creditor would think

upon reading Equifax's report."); *see also Cardinali v. Plusfour, Inc.*, 2019 WL 4723071, at *11 (D. Nev. Sept. 26, 2019) (finding that plaintiff's unsupported assertion that multiple charged-off notations may lead to confusion did not preclude summary judgment because "charge off is well understood in the credit industry to mean that the lender has written the debt off as a profitable loss[,]" and "a charge-off is a one-time event that can't occur multiple times . . . ."). Thus, the Court finds that Koerner has not shown that Experian reported inaccurate information. Because the Court dismisses Koerner's section 1681e(b) claim, the Court declines to address the parties' remaining arguments concerning section 1681e(b).

## II.    Violation of 15 U.S.C. § 1681i (Count III)

### a.   Koerner's Disputes Triggered Experian's Duties Under § 1681i

In Count III, Koerner alleges that Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation and reinvestigation of its report to determine whether the disputed information was inaccurate after Koerner's notification. SAC. ¶¶ 68–72. Experian argues that it is entitled to summary judgment on this count because Koerner's dispute letters did not trigger its duty to investigate under section 1681i. MSJ at 12. Koerner argues that material questions of fact preclude summary judgment. Resp. at 11. The Court agrees with Koerner.

Section 1681i provides that:

if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item

11

from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

Experian contends that Koerner's four mailed dispute letters did not trigger its duty to investigate under the FCRA because Koerner was assisted in submitting the dispute letters by CROs or attorneys. MSJ at 12; citing *Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921 (9th Cir. 2019) (citing 15 U.S.C. § 1681i). Koerner responds that *Warner* does not stand for the proposition advanced by Experian and it is enough that he was personally involved in the drafting, editing, and finalizing of all four of the dispute letters mailed to Experian, with the help of either GCC or his attorneys at PLG. Resp. at 11.

In *Warner*, the plaintiff-consumer "hired Go Clean Credit to submit letters to credit agencies on his behalf, but he did little else." *Warner*, 931 F.3d at 921. Plaintiff asserted that the defendant, a credit reporting agency, violated his rights under the FCRA by not investigating dispute letters sent by Go Clean Credit, a credit-repair organization on his behalf. *Id*. The Ninth Circuit affirmed the district court's grant of summary judgement in favor of the defendant. *Id*. The court interpreted 15 U.S.C. § 1681i as requiring a dispute letter to come "directly" from the consumer and be sent to the agency. *Id*. The court found that a consumer, to satisfy § 1681i's requirement, must have some involvement in the submitted dispute letter. *Id*. The court found no evidence that the plaintiff had any role in preparing the letters or had reviewed the letters. *Id*. As such concluded the Ninth Circuit, the credit reporting agency was not

required to conduct a reinvestigation of the claims because the "letters did not come directly from" the plaintiff. *Id*. at 919. The Ninth Circuit, however, as Koerner contends, limited its decision to the facts of that case and noted that its decision does not reach cases where a letter is "sent to a consumer reporting agency by a consumer's attorney[,]" or when a "family member assisting another by sending a letter on the other's behalf[,]" or when a letter was "sent by a credit repair agency that a consumer reviewed and approved before it was submitted." *Id*. at 921.

As a threshold matter, Experian does not rely on any binding Seventh Circuit law in support of its contention that the four dispute letters did not trigger a duty to reinvestigate. *Warner*, Experian's principal case, is an out of circuit case, and thus, may only serve as persuasive, not binding authority. *See Wrice v. Byrne*, 488 F. Supp. 3d 646, 658 (N.D. Ill. 2020) (finding "out -of-circuit precedent is not binding, though it may be persuasive"). But *Warner* is distinguishable and therefore, of little utility in the Court's analysis. In this case, unlike *Warner*, it is undisputed that Koerner mailed at least one letter. MSJ at 3; DSOF ¶¶ 34, 35. In addition, Koerner also testified that he was at least involved in drafting the letters when he enlisted the help of GCC. Reply at 9. In short, there is evidence before the Court that Koerner was involved in submission of the dispute letters to Experian. Accordingly, summary judgement is improper as it relates to this issue. The Court will now address Experian's next argument.

### b. Reasonableness of Experian's Reinvestigations

Experian next argues that its reinvestigations were reasonable, and thus, it is entitled to summary judgement on this claim. MSJ at 13. Predictably, Koerner disagrees contending that simply relying on Santander was unreasonable. Resp. at 12. The Court finds that there is a question of fact whether Experian's reinvestigation was reasonable precluding summary judgement.

"When a consumer disputes the accuracy of any item of information contained in a credit report, §1681i requires consumer reporting agencies to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Denan*, 959 F.3d at 296. A consumer "disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher, which stands in a far better position to make a thorough investigation of a disputed debt that the [consumer reporting agency] does on reinvestigation." *Id*. "Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994). "The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id*. "The reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Chaitoff v. Experian Info. Sols., Inc.*, 2021 WL 1906460, at *6 (N.D. Ill. May 12, 2021).

This is the case "even when the underlying facts are undisputed" *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001).

Experian asserts that its use of ACDVs with Santander sufficiently meets the requirements of section 1681i. MSJ at 13; (citing *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 606 (7th Cir. 2006); *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019); and *Lee v. Experian Info. Sols.*, 2003 WL 22287351, at *6 (N.D. Ill. Oct. 2, 2003)). Koerner counters that simply forwarding his dispute letters to Santander and accepting whatever Santander included in the ACDV response, was not reasonable. Resp. at 13. Koerner also asserts that the multiple dispute letters coupled with the documentation provided by Santander should have placed Experian on notice that Santander's reporting was unreliable; thus, Experian should have done more than rely on Santander's ACDV response. Resp. at 13–14. Koerner further argues that the cases cited by Experian are distinguishable because unlike this case, all three cases involve facts where the consumer sent dispute letters to the CRAs without any supporting documents such as the ones sent by Koerner. Resp. at 13. Also, Koerner asserts, unlike this case in which four dispute letters were sent by Koerner, *Bagby* and *Lee* involve only one consumer dispute sent to the CRAs. *Id.*

In reply to Koerner's attempt to distinguish its cited case law based on the number of dispute letters, Experian cites *Perry v. Experian Info. Sols., Inc.*, 2005 WL 2861078, at *1 (N.D. Ill. Oct. 28, 2005). Reply at 12. In *Perry*, the plaintiff sent nine dispute letters to Experian. *Perry*, 2005 WL 2861078, at *1. The court determined that summary judgement was proper because there was no reason for Experian to go

15

beyond the use of ACDVs since the "record [was] devoid of any evidence that any of Experian's initial sources was unreliable." *Id*. at 8. The court found that plaintiff's "dispute letters contained mere conclusions, such as "those are not my accounts," and contained no detailed information. *Id*.

The Court agrees with Koerner that there is a question of fact whether Experian's reinvestigation was reasonable. As Koerner argues and the Court agrees, *Bagby, Humphrey, and Lee* are distinguishable because, unlike those cases, Koerner sent multiple documents with his dispute letters to Experian. *See Bagby*, 162 F. App'x at 606; *Humphrey*, 759 F. App'x at 488; *Lee*, 2003 WL 22287351, at *1. Koerner's dispute letters included copies of Santander's August 17, 2015, payoff letter, the October 6, 2015, State Farm letter to Santander, and the canceled check for the payoff amount. Resp. at 3; Pl.'s Resp. DSOF ¶ 20. By contrast, in *Bagby and Lee,* the consumer-plaintiff only disputed their credit reports once. *See Bagby*, 162 F. App'x at 606; *Lee*, 2003 WL 22287351, at *6. Here, Koerner disputed the accuracy of his credit report four times.

The Court further finds *Perry*, relied on by Experian, is also distinguishable. For example in *Perry*, the court found that there was no evidence that any of the defendant's furnishers were unreliable and that the consumer-plaintiff provided only mere conclusions. *Perry*, 2005 WL 2861078, at *1. Here, Koerner has provided more than just conclusions that Santander's information was unreliable. Koerner has provided evidence that after Santander received the payoff check from State Farm, Santander showed that Koerner had an outstanding balance of $1 and $212 in

16

October 2015. Resp. at 13–14. This balance was then changed to $217 and then $212.[4] *Id*. As Koerner points out and the Court agrees, Santander's discrepancies sufficiently raise a question as to whether Santander's information was reliable, and thus, whether Experian's use of ACDVs was sufficient. The record also shows that even Santander could not "recreate its calculation of the deficiency balance for [Koerner's] account and" was "unable to provide additional documents regarding its original calculation." Resp. at 4. As such, the Court finds that summary judgement is not proper as to Koerner's 1681i claim. The Court turns to Experian's damages argument. Resp. at 7–8.

### c. Damages

Experian next argues that Koerner fails to demonstrate any damages for any purported violation of section 1681i. MSJ at 9.

The FCRA "does not create liability without causation[, and t]o bring a successful claim [under § 1681i], the consumer must also show that she suffered injury as a result of any inaccurate information." *Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 689 (7th Cir. 2019). "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages." *Id*. "[E]motional distress can, in certain circumstances, give rise to actual damages under the Act—even where there has been no denial of credit." *Whiting v. Harley-Davidson Fin. Servs.*, 534 F. Supp. 2d 823, 834 (N.D. Ill. 2008).

---

[4] Compare R. 105 exhibits J, K and C with R. 88–4.

Experian contends that Koerner has failed to show any actual damages and he cannot rely strictly on his own self-serving testimony to support his claim. MSJ at 9; Reply at 13 (citing *Sarver*, 390 F. 3d at 971.) Koerner retorts that he has produced evidence of a denial of credit due to Experian's actions, and he has provided corroborating testimony that he suffered emotional and mental distress. Resp at 7–8. The Seventh Circuit imposes a "strict standard for finding of emotional damages because they are so easy to manufacture." *Sarver*, 390 F.3d at 971. It is true that Koerner's own testimony by itself may be insufficient to preclude summary judgement. *Id*. (finding that "when the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements"). But in this case, there is more than just Koerner's testimony. Koerner includes not only his own testimony, but also that of his mother and stepfather. Resp. at 9–10. Unlike *Sarver* where the plaintiff only relied on his own unspecific testimony, Koerner has testified in detail about his emotional distress. Koerner testified that due to high interest rates caused by Experian's actions he "had to ask for down payments on cars and co-signors for vehicles and apartments which affected his relationship with his family and parents. Resp. at 8. Koerner also testified that he was driven to seek counseling. *Id*. at 9. Further, both his mother and stepfather testified that Koerner was negatively affected because Experian's report affected "his profile as an individual economically" and he "was very confused and conflicted about what was going on" as well as "[f]rustrated and anxious." *Id*. at 9–10. According to his mother, these frustrations

were a frequent source of conversations. *Id*. at 10. His stepfather also testified that Koerner "was upset over issues with his credit report on multiple occasions." *Id*.

This evidence creates a genuine dispute as to whether Experian's actions caused Koerner emotional and mental damages. Thus, at this juncture, drawing all reasonable inferences in Koerner's favor as the Court must, Koerner has shown sufficient evidence of damages caused by Experian's actions. *See Whiting*, 534 F. Supp. at 834 (finding that summary judgement was improper when plaintiff provided his own testimony and his "father's testimony about the emotional distress he manifested as a result of his dispute with Financial Services"). The Court now turns to Experian's final argument.

### III. Willful Violation

Lastly, Experian argues that Koerner has failed to show any evidence of a willful violation of § 1681i, and thus, is not entitled to statutory damages under section 1681n(a). MSJ at 15. Experian asserts that reliance on Santander does not support a willful violation of the statute because the Seventh Circuit has held that such reliance is presumptively reasonable. MSJ at 15 citing *Sarver*, 390 F.3d at 972. Koerner responds that Experian's decision to ignore his dispute letters and instead rely on Santander's verifications of obviously irrational reporting showed Experian's willful violation of the FCRA. Resp. at 15. The Court agrees with Experian.

"[T]he FCRA provides a private right of action for injured consumers." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021). "A negligent violation entitles a consumer to actual damages" under 15 U.S.C. § 1681o. *Id*. A

19

willful violation on the other hand, "entitles a consumer to actual damages or statutory damages, with punitive damages left to the court's discretion" under 15 U.S.C. § 1681n. *Id.* (citing 15 U.S.C. § 1681n.) "[R]eckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a). *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007). Here, Experian's reliance on Santander does not support a finding that it acted willfully in violation of § 1681i. As Experian argues, courts have found that reliance on financial institutions like Santander is reasonable. *See Sarver*, 390 F.3d at 972. The record shows that Experian conducted multiple investigation after receiving dispute letters. Experian failed to conduct further investigations only after it determined that the July 2019 and October 2019 letters were frivolous. Additionally, Koerner has not provided any authority supporting his argument that these procedures were willfully improper. As such, the Court finds that Koerner has failed to provide sufficient evidence of willfulness. Therefore, Koerner is precluded from seeking statutory damages under section 1681n(a). *See id.* at 971.

## Conclusion

For the foregoing reasons, Experian's motion for summary judgment [103] is granted in part and denied in part. Summary judgment is granted as to count II and statutory damages under U.S.C. § 1681n(a) but is denied as to count III. A review of the docket shows that before this case was reassigned to this Court, Equifax and Santander filed stipulations of dismissal before Judge Alonso. R. 71 and R. 74. Neither Judge Alonso nor this Court entered an order on those stipulations of

dismissal. Out of an abundance of caution, the Court grants the stipulations of dismissal [71] and [74] and dismisses Equifax and Santander from this case. By 04/14/2023, the parties are directed to file a status report indicating: (1) whether the parties would like a referral to the Magistrate Judge for a settlement conference; (2) whether the parties consent to proceeding with trial before the Magistrate Judge, (3) whether the parties consent to a bench trial, (4) the anticipated number of days for trial (accounting for voir dire), (5) the expected number of witnesses; and (6) if the parties do not consent to proceeding before the Magistrate Judge, their availability for trial.

Dated: March 24, 2023

United States District Judge
Franklin U. Valderrama