IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW KOERNER,<br><br>    Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al,<br><br>    Defendants. | No. 20-CV-0522<br>Judge Franklin U. Valderrama |

### AMENDED MEMORANDUM OPINION AND ORDER[1]

The Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681, *et seq* requires consumer reporting agencies to assure maximum possible accuracy of the information concerning the individual about whom the report relates. Matthew Koerner (Koerner) sued Defendant Experian Information Solutions, Inc. (Experian), a consumer reporting agency, among others[2], for failing to accurately report an unpaid balance in his credit report. R.[3] 1,Compl. Koerner alleged that Experian failed to employ and follow reasonable procedures to assure maximum possible accuracy of his credit report in violation of 15 U.S.C. § 1681e(b) of the FCRA (Count II) and failed to conduct a reasonable investigation and reinvestigation of its report to determine whether the disputed information was inaccurate after being notified by Koerner in

---

[1]This Amended Memorandum Opinion and Order is issued as a result of Experian's Motion for Reconsideration (R. 139, Def.'s Mot. Reconsider), which the Court granted concurrently with the instant ruling.

[2]Defendants Equifax Information Services, LLC, Santander and Trans Union, LLC were all dismissed pursuant to stipulations of dismissal.

[3]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

violation of 15 U.S.C. § 1681i of the FCRA (Count III). Experian has moved for summary judgement. For the reasons that follow, Experian's motion for summary judgement is granted.

**Background**

The following facts are set forth favorably to Koerner, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). While the Court draws all reasonable inferences from the facts in Koerner's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted). *See Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts.").

Koerner purchased a used vehicle in 2011 after obtaining financing from Santander. Pl.'s Resp. DSOF ¶ 10.[4] Koerner, however, stopped making timely payments on his loan which caused Santander to repossess the vehicle and charge-off the loan. *Id.* ¶ 11. Nonetheless, Koerner was able to redeem the vehicle after he was able to make a payment. *Id.* On August 7, 2015, Koerner was involved in a not-at-fault collision in which State Farm, the insurer of the at-fault driver, determined his vehicle was a total loss. *Id.* ¶ 12. Santander sent Koerner a pay-off estimate for

---

[4]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for Experian's Statement of Undisputed Facts (R. 105); "Pl.'s Resp. DSOF" for Koerner's Response to Experian's Statement of Undisputed Facts (R. 101-1 at 1–19); "PSOAF" for Koerner's Statement of Additional Facts (R. 101-1 at 20–25); and "Def.'s Resp. PSOAF" for Experian's Response to Koerner's Statement of Additional Facts (R. 113).

his vehicle of $8,328.45 which was good through August 31, 2015, with a per diem of $4.94. *Id*. State Farm, however, did not issue a check until October 6, 2015, and only for the $8,328.45. *Id*. After applying the $8,328.45 to Koerner's account and assessing fees and unpaid interest, Santander determined State Farm's check did not cover all of what was owed. *Id*. ¶ 14. Accordingly, Santander sent Koerner a deficiency letter explaining that the amount of the State Farm check was less than the balance owed by Koerner, and thus, he had a remaining balance of $212.65. *Id*. Koerner claims he never received the deficiency letter. *Id*. Further, Koerner states that following State Farm's payment, he contacted Santander to confirm that the vehicle had been paid off by State Farm and that his account balance was zero, which Santander confirmed. *Id*. ¶ 20.

Santander had been sending Koerner's account information to Experian who in turn had been reporting it since 2011. Pl.'s Resp. DSOF ¶ 15. In December 2016, Koerner retained Credit Restoration of Nevada (CRN), a credit reporting organization (CRO). *Id*. ¶ 32. He informed CRN that he had fallen behind on his payments, the car was repossessed, and after the accident and issuance of a check to Santander, State Farm sent him a check for approximately $200 because State Farm's valuation of the vehicle was more than what he owed. *Id*. An online dispute was sent to Experian questioning the account balance; however, it failed to provide any supporting documentation. *Id*. ¶ 18. Experian reinvestigated by sending an Automated Consumer Dispute Verification (ACDV) form to Santander, who updated

3

the written-off amount to $1 and verified that the charged off status was accurate. *Id.*

In March 2019, after checking his Experian credit report, Koerner discovered that Santander was reporting his Santander account with a $212 outstanding balance. Pl.'s Resp. DSOF ¶ 19. To investigate the situation, Koerner retained Go Clean Credit (GCC), another CRO. *Id.* ¶ 34. GCC's procedures for sending dispute letters entails that it mail letters directly to Trans Union and Equifax, but it has an alternative procedure for Experian. *Id.* For Experian, GCC writes the dispute letter and places it in a sealed envelope addressed to Experian so that all a consumer must do is drop it in a mailbox. *Id.*

Sometime in March of 2019, GCC wrote and sent dispute letters to Experian as described above. Pl.'s Resp. DSOF ¶¶ 34, 35. Experian claims that Koerner only reviewed the letters and dropped them in the mail. *Id.* ¶ 35. The letters contested the $212 balance and explained that Koerner's vehicle had been paid off by State Farm, and included copies of Santander's August 17, 2015, payoff letter, the October 6, 2015, State Farm letter to Santander, and the canceled check for the payoff amount. Resp. at 3; Pl.'s Resp. DSOF ¶ 20. Experian reinvestigated this dispute by sending an ACDV form to Santander along with a copy of Koerner's letters. Pl.'s DSOF ¶ 21. Santander responded by verifying the accuracy of the $212 balance and the charged-off reporting. *Id.* ¶ 22.

A second letter was sent to Experian in May of 2019, in which Koerner complained that Experian's response had been inadequate, requested a description of

4

how Experian had verified the Santander account, and requested an answer as to why Experian had completely ignored the documentary proof showing that Koerner was no longer responsible for any debt owed on the vehicle. Resp. at 3; Pl.'s Resp. DSOF ¶ 23. This letter, however, did not include any supporting documents. Pl.'s DSOF ¶ 23. Experian again sent an ACDV to Santander with the dispute letters, and Santander again verified the accuracy of the account. *Id*. Experian also sent Koerner a description of its reinvestigation procedures. *Id*.

In July 2019, an identical letter was received by Experian; however, Experian determined that additional disputes were frivolous, and informed Koerner of that fact. Pl.'s Resp. DSOF ¶ 25. Koerner then retained the services of Price Law Group (PLG). *Id*. ¶ 36.

In October of that same year, Experian received another dispute letter which Experian claims PLG wrote, which again disputed the $212 balance, but did not include any supporting documents. Pl.'s Resp. DSOF ¶¶ 26, 37. Experian determined that the letter was a duplicate of the previous dispute letters and mailed a letter back informing him of its determination. *Id*. Although disputed, Koerner claims that the March, May, June, and October letters were personally written by him with the assistance of GCC or his attorneys. *Id*. at 34.

Koerner subsequently filed suit against Santander, Equifax, Experian, and Trans Union alleging violations of the FCRA 15 U.S.C. § 1681s-2(b) (Count I), FCRA 15 U.S.C. § 1681e(b) (Count II), and 15 U.S.C. § 1681i (Count III). R. 1. Compl.[5]

---

[5]Koerner filed an Amended Complaint. R. 3, Am. Compl.

Koerner seeks actual damages under 15 U.S.C. § 1681o, and among other things, statutory and punitive damages under 15 U.S.C. § 1681n(a). SAC ¶ 74. Equifax, Trans Union, and Santander have all filed stipulations of dismissals. R. 71, 74, 96. Experian has now moved for summary judgment.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (internal quotation marks and citations omitted). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or

6

make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

In Count II, Koerner alleges that Experian violated 15 U.S.C. § 1681e(b) of the FCRA by failing to employ and follow reasonable procedures to assure maximum possible accuracy of Koerner's credit report information and file. SAC ¶ 63. He claims that, as a result of this violation, he has sustained damages including the loss of credit opportunities and favorable credit terms, emotional distress, humiliation, and mental anguish. *Id.* ¶ 64. Experian argues that it is entitled to summary judgement, however, because there is no evidence that Experian reported any inaccurate information. R. 104, MSJ at 5. The Court agrees.

The FCRA "seeks to promote fair and accurate credit reporting and to protect consumer privacy." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). To that end, the FCRA "regulates the consumer reporting agencies that compile and disseminate personal information about consumers." *Id.* The FCRA applies not only to credit reporting agencies, but also to furnishers of information to the agencies. *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1003 (N.D. Ill. 2009). The FCRA imposes duties upon creditors and furnishers of information commensurate with "their respective roles in the credit reporting market." *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). "Furnishers provide consumer credit data to credit reporting agencies, and the consumer reporting agencies reflect that

information on a consumer's credit history." *Id*. The FCRA's "statutory scheme primarily tasks furnishers with providing accurate information to the consumer reporting agencies…." *Chuluunbat v. Experian Info Sols., Inc.*, 4 F. 4th 562, 566 (7th Cir. 2021). Section 1681(e)(b) of the FCRA governs compliance procedures and provides that: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). If a consumer disputes "the completeness or accuracy of any item of information, a consumer reporting agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). The FCRA provides consumers a civil remedy for damages against any person who willfully or negligently fails to comply with any requirement imposed under 15 U.S.C. § 1681, et seq. 15 U.S.C. §§ 1681n–1681o.

In order to prevail in a section 1681e(b) claim, a plaintiff must show that a credit reporting agency prepared a report containing inaccurate information. *Dena* 959 F.3d at 297. A credit reporting agency, however, "is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA does not make reporting agencies strictly liable for all inaccuracies." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). Accordingly, "a credit reporting agency is not liable under the FCRA if it followed reasonable procedures to assure maximum possible accuracy, but nonetheless reported inaccurate information in the consumer's credit report." *Id*. "The reasonableness of a reporting agency's

8

procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver*, 390 F.3d at 971.

Experian argues that there is no evidence that it reported inaccurate information. MSJ at 5. The absence of such evidence submits Experian dooms Koerner's case. MSJ at 2, 7; citing *Denan*, 959 F.3d at 294. Surprisingly, Koerner fails to address this argument and therefore waives any argument against it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Rather, Koerner insists that there are factual disputes that preclude summary judgment because Santander's notes and records are confusing and convoluted to the point that Santander in a sworn affidavit stated it was not "able to recreate its calculation of the deficiency balance" and was "unable to provide additional documents regarding its original calculation." Resp. at 4. Next, Koerner argues that the amount requested by Santander in the November 16, 2015, deficiency letter of $212.65 does not match Santander's Account Report or $212.62. *Id*. Lastly, Koerner contends that because Experian reported the Santander account as charged-off for every month from November 2013 through January 2019, even after he redeemed his vehicle, it effectively communicates to any potential creditor that he had defaulted and failed to make payments on the account every month for over five years, and thus, should have been updated and removed. *Id*. at 7.

The Court agrees with Experian that there is no evidence that it reported inaccurate information. Because inaccurate information is the *sine qua non* of a § 1681e(b) claim, Experian is entitled to summary judgement. *See Denan*, 959 F.3d at

9

293–294. Essentially, Koerner's dispute is not over whether Experian reported inaccurate information, but that Experian was required to determine if Koerner was liable for the $212 balance. Seventh Circuit case law forecloses this argument. *Id*. at 295. In *Denan*, the consumer-plaintiff argued that the reported debt was legally invalid. *Id*. The Seventh Circuit held that "inaccurate information under 15 U.S.C. § 1681i … mean[s] factually inaccurate information, as consumer reporting agencies are neither qualified nor obligated to resolve legal issues." *Id*. at 296. The Seventh Circuit also determined that "[a]ccuracy for furnishers, however, means information that correctly reflects ... liability for the account, [and n]either the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies, much less a duty to determine the legality of a disputed debt." *Id*. at 295. (internal citations and quotation marks omitted). Further, "the FCRA does not require unfailing accuracy from consumer reporting agencies[; i]nstead, it requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy when it prepares a credit report." *Id*.

      Lastly, the Court is unpersuaded by Koerner's argument that Experian's reporting of Koerner's charged-off information was misleading to any potential creditor. Resp. at 7. The Court agrees with Experian that this kind of speculation is insufficient at summary judgment. Reply at 6; citing *Danley v. Equifax Info. Servs.*, 2020 WL 616466, at *4 (N.D. Ill. Feb. 10, 2020) ("Plaintiff relies almost entirely on her own speculation about what a creditor would think[,]" yet, "Plaintiff is not a creditor and has no apparent basis for speculating about what a creditor would think

10

upon reading Equifax's report."); *see also Cardinali v. Plusfour, Inc.*, 2019 WL 4723071, at *11 (D. Nev. Sept. 26, 2019) (finding that plaintiff's unsupported assertion that multiple charged-off notations may lead to confusion did not preclude summary judgment because "charge off is well understood in the credit industry to mean that the lender has written the debt off as a profitable loss[,]" and "a charge-off is a one-time event that can't occur multiple times . . . ."). Thus, the Court finds that Koerner has not shown that Experian reported inaccurate information and declines to address the parties' remaining arguments concerning section 1681e(b).

The Court now turns to Experian's arguments for Count III. Because the Court finds that Koerner has not established that Experian reported inaccurate information in Count II, Count III fails for the same reason. A "plaintiff advancing §§ 1681e(b) and 1681i(a) claims must allege a credit report contained inaccurate information." *Denan*, 959 F.3d at 298; *see Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021) ("A threshold requirement for claims under both sections [§§ 1681e(b) and 1681i(a)] is that there must be an inaccuracy in the consumer's credit report."). Experian is likewise entitled to summary judgment as to Count III.

## Conclusion

For the foregoing reasons, the Court grants Defendant Experian's motion for summary judgment on Counts II and III [103]. Civil case terminated.

Dated: March 27, 2024

_____
United States District Judge
Franklin U. Valderrama